UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **PHILIP MASON** | **CIVIL ACTION NO.** |
| **VERSUS** | **JUDGE:** |
| **CITY OF PORT ALLEN;** <br> **ROGER BERGERON, INDIVIDUALLY** <br> **AND IN HIS OFFICIAL CAPACITY;** <br> **AND R.J. LOUPE, INDIVIDUALLY** <br> **AND IN HIS OFFICIAL CAPACITY** | **MAGISTRATE JUDGE:** |

## COMPLAINT

The Complaint of PHILIP MASON, a resident of the full age of majority of West Baton Rouge Parish, Louisiana, respectfully represents:

1.

Jurisdiction herein is founded pursuant to 28 U.S.C.§1331 (federal question) and 28 U.S.C. §1367. Venue is proper within the Middle District as the majority of the incidents sued upon occurred within this judicial district.

2.

The Defendants listed below are justly and truly indebted to Mr. Mason for all sums as are reasonable under the premises, compensatory damages, lost wages and benefits, back pay and front pay in lieu of reinstatement, punitive damages, attorney's fees, all costs of these proceedings, interest thereon from the date of judicial demand until paid, and all such other relief to which Mr. Mason is entitled at law or in equity:

    A.    City of Port Allen (hereinafter referred to as "the City"), a municipal entity incorporated under the laws of the State of Louisiana;

Page -1-

B.  Roger Bergeron, individually and in his official capacity as Mayor of Port Allen, a resident of the full age of majority of West Baton Rouge Parish, Louisiana; and

C.  R.J. Loupe, individually and in his official capacity as Mayor of Port Allen, a resident of the full age of majority of West Baton Rouge Parish, Louisiana.

3.

This lawsuit is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*; 42 U.S.C. §1981; 42 U.S.C. §1983; Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.*; and Louisiana anti-reprisal law, La. R.S. 23:967.

4.

On or about April 16, 2010, Mr. Mason was hired by the City as Assistant Chief Financial Officer in the Administration Department. Mr. Mason is African-American. In October 2010, the CFO retired, and Mr. Mason assumed full duties as CFO, but retained the Assistant CFO title and salary. On January 1, 2011, Mr. Mason also became the City Clerk. On January 18, 2012, Mr. Mason was terminated.

5.

At all times pertinent hereto, Mr. Mason was an "employee" of the City within the meaning and intent of federal and Louisiana law. At all times pertinent hereto, the City was the "employer" of Mr. Mason within the meaning and intent of federal and Louisiana law, and upon information and belief, employed greater than 500 employees.

6.

At all pertinent times, Roger Bergeron was the Mayor of the City, was an agent and employee of the City, and was Mr. Mason's supervisor with immediate and successively higher authority over his employment. Mr. Bergeron is Caucasian.

7.

At all pertinent times, R.J. Loupe was either Mayor, Interim Mayor, and/or Mayor Pro Tempore of the City, was an agent and employee of the City, and was Mr. Mason's supervisor with immediate and successively higher authority over his employment. Mr. Loupe is Caucasian.

8.

Also in April 2010, Cenceria Dalcourt, African-American female, was hired as Assistant Chief Administrative Officer in the Administration Department. Both Mr. Mason and Ms. Dalcourt were hired by Mayor Derek Lewis (African-American), over the strenuous objections of the City Council's three Caucasian members, one being Mr. Loupe. When Mayor Lewis informed the City Council that Mr. Mason and Ms. Dalcourt were being hired, these Caucasian members became furious and expressed their dissatisfaction. These members wanted to hire Caucasian individuals for these jobs. One Caucasian member even requested that the starting salaries of Mr. Mason and Ms. Dalcourt be reduced.

9.

Beginning in April 2010, Mr. Mason witnessed and was subjected to constant and pervasive offensive sexually-based comments and behavior by Mayor Lewis. Some comments were directed

toward Mr. Mason, while other comments were directed at female employees, including Ms. Dalcourt. For example, Mayor Lewis commented, in front of other employees, that Mr. Mason had a young d**k, that his d**k just probably jumps up for no reason, and that Mr. Mason probably goes around town f**king everything. Mr. Mason also witnessed Mayor Lewis sexually harassing Ms. Dalcourt and other female employees. Mayor Lewis made numerous sexually offensive comments to Ms. Dalcourt, including asking her for sex. For example, in September 2010, at an LMA conference out of town, Mayor Lewis made several lewd comments about other women present at the conference, and propositioned Ms. Dalcourt for sex and made sexual comments to her. Mayor Lewis' actions created a hostile work environment for Mr. Mason, Ms. Dalcourt and other female employees.

10.

On or about June 9, 2011, Mr. Mason submitted a written complaint to the City, opposing the unlawful sexual harassment and hostile work environment by Mayor Lewis. The next day, Mayor Lewis held a meeting with all Administration employees without Mr. Mason present, disclosing Mr. Mason's confidential complaint and speaking negatively about Mr. Mason to his co-workers.

11.

At the end of June 2011, Mayor Lewis resigned and pled guilty to racketeering in connection with the Operation Blighted Officials sting conducted by the FBI. Mayor Pro Tem R.J. Loupe became Interim Mayor. In August 2011, Mayor Loupe hired a third party to investigate the complaints of unlawful harassment and hostile work environment. **[any resolution from this?]**

12.

Soon thereafter, in August 2011, the City Council and Mayor Loupe denied Mr. Mason a supplemental pay increase to which he was entitled for working the duties of the CFO position since October 2010. Also in August 2011, Mayor Loupe appointed a special personnel committee to assist in the selection of the new CFO. The committee consisted of Mr. Bergeron and H. Riverie, both Caucasian males. Mr. Mason applied for the CFO position and made it known to Mayor Loupe and the City Council that he was seeking this job. Although Mayor Loupe had told Mr. Mason that he wanted Mr. Mason as CFO, Mr. Mason was not interviewed for the job, nor was the other qualified African-American candidate. The position was given to Audrey McCain (Caucasian female), who was less qualified than Mr. Mason. Ms. McCain did not meet the minimum qualifications for the job and did not have any governmental accounting experience.

13.

In October 2011, Mayor Loupe told Mr. Mason that the City still needed an Assistant CFO. In November 2011, Roger Bergeron was elected Mayor, and Mr. Loupe returned to Mayor Pro Tem. Mayor Bergeron also told Mr. Mason that the Assistant CFO position was needed.

14.

In December 2011, the City and Mayor Bergeron stripped Mr. Mason of the City Clerk position and the pay supplement that he had been receiving for the position.

15.

In late September 2011, Mr. Mason submitted a charge to the Equal Employment Opportunity Commission alleging retaliation for his opposing and reporting unlawful sexual harassment to the City. On or about November 2, 2011, Mr. Mason sent a completed Intake

Questionnaire to the EEOC. As of January 5, 2012, the EEOC had informed the City of Mr. Mason's charge. On January 9, 2012, Mr. Mason submitted to the EEOC a fully executed "Charge of Discrimination." On that same day, Mr. Mason told Mayor Bergeron that the City would be receiving an EEOC charge that he had filed for retaliation, and also complained to Mayor Bergeron that he was being discriminated against based upon his race.

16.

On January 18, 2012, Mayor Bergeron informed Mr. Mason that he was being terminated. The proffered reason for the termination was that the City did not need the Assistant CFO position. On January 23, 2012, Ms. McCain retroactively adjusted Mr. Mason's time and converted sick days to annual leave, resulting in Mr. Mason receiving less vacation pay upon his termination.

17.

Ms. Dalcourt (African-American), Assistant Chief Administration Officer, was also denied a promotion – to Chief Administration Officer. Like Mr. Mason, Ms. Dalcourt had also reported and opposed the unlawful sexual harassment to the City and filed an EEOC charge. Mayor Bergeron and the City hired Adrian Genre as CAO, a Caucasian male who pled guilty to and served time in prison for lying under oath about his racially discriminatory hiring practices while he was Chief of Police.

**COUNT ONE**

18.

Because Mr. Mason reported and opposed unlawful sexual harassment and race discrimination and because he filed an EEOC charge, Defendants retaliated against him in the following, non-exclusive, ways: (1) creating a harassment and hostile work environment, including criticizing him in front of his co-workers; (2) denying Mr. Mason a pay increase

to which he was entitled; (3) denying Mr. Mason the promotion to Chief Financial Officer; (4) taking away his City Clerk position and associated pay; and (5) terminating Mr. Mason.

19.

By these actions, the City violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.,* and Louisiana anti-reprisal law, La. R.S. 23:967.

20.

By these actions, Defendants also violated Mr. Mason's civil and constitutional rights, pursuant to 42 U.S.C. §1981 and the 1st and 14th Amendments to the U.S. Constitution, for which he seeks redress through 42 U.S.C. §1983.

21.

At all times pertinent hereto, the City's agents and employees, including Mr. Bergeron and Mr. Loupe, were persons acting under color of state law within the meaning and intent of 42 U.S.C. §1983.

22.

At all times pertinent hereto, Mr. Mason enjoyed clearly established rights to report and oppose unlawful conduct, including sexual harassment and racial discrimination, by the City and its agents and employees, all as guaranteed pursuant to the 1st Amendment to the U.S. Constitution. In addition, Mr. Mason enjoyed clearly established rights to file a charge with the Equal Employment Opportunity Commission and publicly protest such unlawful conduct. Defendants' retaliation against Mr. Mason abridged, impaired and interfered with his clearly established rights of free speech and association under the 1st Amendment.

23.

Furthermore, Mr. Mason enjoyed clearly established rights to Equal Protection of the Laws, as guaranteed by the 14th Amendment to the U.S. Constitution. Defendants violated these rights by taking adverse employment actions against him because he reported and opposed the City's unlawful behavior. There was no legitimate governmental interest served by this unconstitutionally differential treatment.

24.

At all times pertinent hereto, the City's agents and employees, including Mr. Bergeron and Mr. Loupe, acted according to a policy or custom of the City and violated Mr. Mason's clearly established rights to be free of unlawful retaliation. The City had knowledge of, and ratified, these clear and obvious violations of Mr. Mason's civil rights.

25.

Mr. Mason timely filed a Charge of Discrimination with the EEOC and received his Notice of Right to Sue dated June 28, 2012.

## COUNT TWO

26.

Defendants discriminated against Mr. Mason on the basis of his race in the following, non-exclusive, ways: (1) denying Mr. Mason a pay increase to which he was entitled; (2) denying Mr. Mason the promotion to Chief Financial Officer; (3) taking away his City Clerk position and associated pay; and (4) terminating Mr. Mason.

27.

By these actions, Defendants violated Mr. Mason's civil rights under Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.*; 42 U.S.C. §1981 and the 14th Amendment to the U.S. Constitution, for which he seeks relief pursuant to 42 U.S.C. §1983.

28.

At all times pertinent hereto, the City's agents and employees, including Mr. Bergeron and Mr. Loupe, were persons acting under color of state law within the meaning and intent of 42 U.S.C. §1983.

29.

At all times pertinent hereto, the City's agents and employees, including Mr. Bergeron and Mr. Loupe, acted according to a policy or custom of the City and violated Mr. Mason's clearly established rights to be free of racial discrimination in the making and enforcing of contracts. The City had knowledge of, and ratified, these clear and obvious violations of Mr. Mason's civil rights.

30.

Furthermore, Mr. Mason enjoyed clearly established rights to Equal Protection of the Laws, as guaranteed by the 14th Amendment to the U.S. Constitution. Defendants violated these rights by taking adverse employment actions against him because of his race. There was no legitimate governmental interest served by this unconstitutionally differential treatment.

31.

Mr. Mason timely filed a charge of race discrimination against the City with the EEOC, but has not yet received his Notice of Right to Sue. When Mr. Mason receives his Notice of Rights, he will amend this Complaint to add race discrimination claims against the City under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*

**********

32.

The City is *respondeat superior* liable under Louisiana law for the unlawful conduct of its employees described herein.

33.

As a result of the incidents sued upon herein, Mr. Mason has sustained damages which include, without limitation, past and future lost wages and benefits, including back pay and front pay in lieu of reinstatement; lost anticipated wages due to a wage increase; lost anticipated wages which would have resulted from a denied promotion; lost promotional opportunities, promotion and advancement; severe emotional distress, mental anguish, humiliation, and embarrassment; damage to reputation; loss of earning capacity; expenses in finding comparable employment; and all such other damages as will be more fully shown at trial.

34.

By the actions described above, Defendants have engaged in intentional discrimination and with malice and/or reckless indifference to the federally protected rights of Mr. Mason, and thus are liable for punitive damages.

35.

Mr. Mason is entitled to and desires an award of attorney's fees, litigation expenses, and all such other relief to which he is entitled at law or in equity, pursuant to federal and Louisiana law.

36.

Mr. Mason is entitled to and requests a trial by jury.

WHEREFORE, Complainant, Philip Mason, prays for a trial by jury and after due proceedings are had, that there be judgment in his favor and against defendants, City of Port Allen; Roger Bergeron, Individually and in his Official Capacity; R.J. Loupe, Individually and in his Official Capacity, for all sums as are reasonable under the premises, compensatory damages, lost wages and benefits, back pay and front pay in lieu of reinstatement, punitive damages, attorney's fees, all costs of these proceedings, interest thereon from the date of judicial demand until paid, and all such other relief to which Complainant is entitled at law or in equity.

Respectfully submitted:

/s/Robert L. Campbell
Robert L. Campbell - La. Bar Roll No. 27986
Dustin G. Flint - La. Bar Roll No. 30890
WILLIAMSON, FONTENOT & CAMPBELL, LLC
343 Royal Street
Baton Rouge, LA 70802
Telephone: (225) 383-4010
Facsimile: (225) 383-4114
robb@lawyerbatonrouge.com

*Attorneys for Complainant Philip Mason*